UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

DEC 12 2022 *LM*

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. |
| | ) | |
| | ) | |
| v. | ) | Violations: Title 15, United States |
| | ) | Code, Sections 77q(a), 77x, 78j(b), |
| | ) | 78ff, and 17 C.F.R. Section 240.10b-|
| | ) | 5; and Title 18, United States Code, |
| JAMES COLLINS | ) | Section 1344(2) |

**1:22-cr-00639**

**COUNT ONE**    Judge Thomas M. Durkin
Magistrate Judge Beth W. Jantz

The SPECIAL MAY 2022 GRAND JURY charges:

1.    At times material to this Indictment:

**Relevant individuals and entities**

     a.    Defendant JAMES COLLINS was a resident of Illinois, and, along with Co-Schemer A, he operated an entity known as Honor Finance, LLC. COLLINS was the Chief Executive Officer of Honor Finance, LLC and a shareholder of Honor Finance, LLC. Co-Schemer A was its Chief Operating Officer.

     b.    Honor Finance, LLC was a limited liability company that was engaged in the business of sub-prime automobile financing.

c.      Ratings Agencies 1 and 2 were entities that, among other things, evaluated and rated bonds prior to their issuance for the benefit of potential and actual investors in those bonds.

d.      Financial Institution 1 and its affiliated company, Underwriter 1, together provided lending and underwriting services to their clients.  Financial Institution 1's deposits were insured by the Federal Deposit Insurance Corporation.

**The Warehouse Revolving Credit Facility**

e.      In or about May 2015, Financial Institution 1 and Honor Finance, LLC entered into an agreement whereby Financial Institution 1 provided a $200 million warehouse revolving credit facility (the "Warehouse Line") to Honor Finance, LLC, for Honor Finance, LLC's use in its lending operations.

f.      The Warehouse Line was governed by a Warehouse Agreement between Financial Institution 1 and Honor Finance, LLC, which provided for, among other things, the amount of money that Honor Finance, LLC could draw from the Warehouse Line at any one time.

g.      The Warehouse Agreement obligated Honor Finance, LLC to provide to Financial Institution 1, on an ongoing basis, certain data about the performance of the loans in Honor Finance, LLC's portfolio.  One of the

2

purposes of requiring data about the performance of its loan portfolio was for Financial Institution 1 to monitor the health of Honor Finance, LLC's loan portfolio and analyze whether certain remedial actions needed to be taken if the loan portfolio's performance was deficient in certain respects.

**The HATS Trust**

h.     In or about December 2016, Honor Finance, LLC securitized thousands of loans in Honor Finance, LLC's loan portfolio and sold them as bonds to investors.     An entity known as the Honor Automobile Trust Securitization 2016-1 ("HATS") was created for this purpose.  Honor Finance, LLC was the Servicer of the HATS Trust, Underwriter 1 underwrote the bonds, and Financial Institution 1 served as Indenture Trustee, Backup Servicer, and Custodian of the bonds.

i.     Under the terms of the HATS Trust, certain eligibility requirements were established for including particular loans in the HATS portfolio, including whether and how far in arrears was a particular loan, and whether Honor Finance, LLC or any of its affiliates had advanced funds to keep a loan from being more than a certain amount of time in arrears.

j.     The terms of the HATS Trust and related documents governed how Honor Finance, LLC would service the loans in the HATS Trust

3

portfolio, including its use of loan extensions and deferments, charge-off policies, and repossessions of vehicles.

        k.    The terms of the HATS Trust also governed the priority of payments from the HATS Trust, providing that different bond holders would be paid in an order based on the classes of bonds they owned. It provided that certain requirements must be met concerning the amount of collateral for the bonds before Honor Finance, LLC itself could get any cash from the HATS Trust during a particular period. Honor Finance, LLC's ability to receive money from the HATS Trust during a particular period depended in part on an overcollateralization ratio, which was the outstanding pool balance of the HATS Trust's loan portfolio minus the aggregate note balance of the bonds issued to the bond holders. The overcollateralization needed to be above a certain level before Honor Finance, LLC could take money from the HATS Trust for a particular period.

        l.    Pursuant to the terms of the HATS Trust, Honor Finance, LLC was required to report on an ongoing basis certain data concerning the performance of the HATS Trust loan portfolio in order for Financial Institution 1, the ratings agencies, and the bond holders to evaluate the health of the loan portfolio serving as the collateral for the bonds.

**Accounting entries**

m.      Honor Finance, LLC at times utilized an accounting entry it referred to as an "Allowable Delinquency," in which it provided certain borrowers an extension of time to repay loans. Honor Finance, LLC applied many Allowable Delinquencies without the borrower asking for or approving of the extension.

n.      Honor Finance, LLC at times also used an accounting entry it referred to as an "Honor Payment," in which certain borrowers who were in arrears were provided credits for payments that had not been made.

2.      Beginning no later than in or about May 2015, and continuing until no earlier than in or about May 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,

defendant herein, knowingly participated in a scheme to obtain money and property owned by and under the custody and control of a financial institution, by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

3.      It was part of the scheme that defendant JAMES COLLINS and Co-Schemer A used various methods, including Allowable Delinquencies and Honor Payments, to submit false information to Financial Institution 1 about

5

loan portfolios to sub-prime borrowers, so that they could continue to maintain a certain level of funding pursuant to the Warehouse Line and increase the amount of funding they received from the HATS Trust.

The Warehouse Line

4.     It was further part of the scheme that defendant JAMES COLLINS and Co-Schemer A submitted information to Financial Institution 1 about a portfolio of loans to sub-prime borrowers, in connection with the $200 million Warehouse Line, that they knew was false, in that the information misrepresented the extent to which many of these loans were in arrears, so that COLLINS and Co-Schemer A could maintain a certain level of funding pursuant to the Warehouse Line.

5.     It was further part of the scheme that defendant JAMES COLLINS selected and caused to be selected vehicle loans for the Warehouse Line portfolio that he knew were not eligible to be included in that portfolio of loans because, among other things, they were more than 30 days in arrears and because Honor Finance, LLC and its affiliates previously had advanced money to the borrowers through the improper use of Allowable Delinquencies and Honor Payments. By improperly using Allowable Delinquencies and Honor Payments, COLLINS caused the ineligibility of these loans to be hidden from Financial Institution 1.

6. It was further part of the scheme that defendant JAMES COLLINS caused to be submitted to Financial Institution 1 monthly reports about the status of the loans in the Warehouse Line portfolio that included false and misleading information and material omissions about loans for which an Allowable Delinquency was recorded, including the fact that Honor Finance, LLC had no communication with the borrower in connection with the recording of the Allowable Delinquency. COLLINS caused these Allowable Delinquencies to be recorded in order to keep these loans from becoming further in arrears and avoid meeting or exceeding metrics that could have resulted in a reduction of funds available to Honor Finance, LLC from the Warehouse Line.

7. It was further part of the scheme that defendant JAMES COLLINS caused to be submitted to Financial Institution 1 monthly reports about the status of the loans in the Warehouse Line portfolio that included false and misleading information and material omissions about loans for which an Honor Payment was recorded, including causing Honor Payments to be applied to avoid meeting or exceeding metrics that could have resulted in a reduction of funds available to Honor Finance, LLC from the Warehouse Line.

8. It was further part of the scheme that after Financial Institution 1 learned about Honor Finance, LLC's practice of using Honor Payments,

defendant JAMES COLLINS made and caused to be made misrepresentations and material omissions to Financial Institution 1 about the nature of and reasons for Honor Finance, LLC's use of Honor Payments, in order to conceal the scheme and continue to receive funds under the Warehouse Line.

9. It was further part of the scheme that after Financial Institution 1 learned about Honor Finance, LLC's practice of using Honor Payments, defendant JAMES COLLINS made and caused to be made misrepresentations and material omissions to Financial Institution 1 about Honor Finance, LLC's efforts to modify its use of Honor Payments.

10. As a result of the false representations and material omissions defendant JAMES COLLINS made and caused to be made in connection with the Warehouse Line, Financial Institution 1 sustained a loss of about $50,200,000.

The HATS Trust

11. It was further part of the scheme that defendant JAMES COLLINS made and caused to be made false statements and material omissions about a portfolio of loans to sub-prime borrowers in connection with the HATS Trust that misrepresented the extent to which many of these loans were in arrears, in an effort to increase the amount of funding Honor Finance, LLC received from the HATS Trust.

8

12.    It was further part of the scheme that defendant JAMES COLLINS made and caused to be made false statements and material omissions to Ratings Agencies 1 and 2 about Honor Finance, LLC's use of Allowable Delinquencies and Honor Payments and its practices regarding repossessions of vehicles and charge-offs, in order to obtain from them higher ratings for the HATS Trust bonds than would have been justified had Ratings Agencies 1 and 2 known the truth about Honor Finance, LLC's uses of those accounting mechanisms.

13.    It was further part of the scheme that defendant JAMES COLLINS made and caused to be made false statements and material omissions to potential purchasers of the HATS Trust bonds about Honor Finance, LLC's use of Allowable Delinquencies and Honor Payments and its practices regarding repossessions of vehicles and charge-offs in order to persuade them to purchase HATS Trust bonds.

14.    It was further part of the scheme that defendant JAMES COLLINS made and caused to be made false statements and material omissions to Financial Institution 1 about Honor Finance, LLC's use of Allowable Delinquencies and Honor Payments and its practices regarding repossessions of vehicles and charge-offs in order to persuade Financial

Institution 1 and Underwriter 1 to provide support and underwrite the HATS Trust bonds.

15. It was further part of the scheme that defendant JAMES COLLINS selected and caused to be selected vehicle loans for the HATS Trust portfolio that he knew were not eligible to be included in that portfolio of loans because, among other things, they were more than 30 days in arrears and because Honor Finance, LLC and its affiliates previously had advanced money to the borrower through the improper use of Allowable Delinquencies and Honor Payments. By improperly using Allowable Delinquencies and Honor Payments, COLLINS caused the ineligibility of these loans to be hidden from Financial Institution 1, Ratings Agencies 1 and 2, and the bond investors.

16. It was further part of the scheme that defendant JAMES COLLINS caused to be submitted to Financial Institution 1, Ratings Agencies 1 and 2, and the bond investors, monthly reports about the status of the loans in the HATS Trust portfolio that included false and misleading information and material omissions about loans for which Allowable Delinquencies were recorded, including the fact that Honor Finance, LLC had no communication with the borrower in connection with the recording of the Allowable Delinquency. COLLINS caused these Allowable Delinquencies to be recorded in order to keep these loans from becoming further in arrears and charged off

so as to increase the reported value of the outstanding principal balance of the HATS Trust loan portfolio and to increase the overcollateralization ratio, thereby allowing Honor Finance, LLC to obtain more money from the HATS Trust than it should have obtained.

17.     It was further part of the scheme that defendant JAMES COLLINS caused false statements and material omissions to be made to Financial Institution 1, Ratings Agencies 1 and 2, and the bond holders, concerning the frequency of Honor Finance, LLC's use of Allowable Delinquencies for loans in the HATS Trust loan portfolio.

18.     It was further part of the scheme that defendant JAMES COLLINS caused to be submitted to Financial Institution 1, Ratings Agencies 1 and 2, and the bond investors, monthly reports about the status of the loans in the HATS Trust portfolio that included false and misleading information and material omissions about loans for which an Honor Payment was recorded. COLLINS caused these Honor Payments to be recorded in order to keep these loans from becoming further in arrears and charged off, so as to increase the reported value of the HATS Trust's loan portfolio's outstanding principal balance and the overcollateralization ratio, thereby allowing Honor Finance, LLC to obtain more money from the HATS Trust than it should have obtained.

11

19. It was further part of the scheme that defendant JAMES COLLINS fraudulently caused the recording of vehicle repossessions for defaulted loans to be delayed in order to avoid the loan being charged off and the consequent reduction of the HATS Trust portfolio's outstanding principal balance and the overcollateralization ratio that would have occurred had the charge-offs been made.

20. It was further part of the scheme that after Financial Institution 1 learned about Honor Finance, LLC's practice of using Honor Payments, defendant JAMES COLLINS made and caused to be made misrepresentations and material omissions to Financial Institution 1 about the nature of and reasons for Honor Finance, LLC's use of Honor Payments.

21. It was further part of the scheme that after Financial Institution 1 learned about Honor Finance, LLC's practice of using Honor Payments, defendant JAMES COLLINS made and caused to be made misrepresentations and material omissions to Financial Institution 1 about Honor Finance, LLC's efforts to modify its use of Honor Payments.

22. As a result of the false representations and material omissions defendant JAMES COLLINS made in connection with the HATS Trust, Financial Institution 1 sustained a loss of about $4,300,000.

23.     It was further part of the scheme that defendant JAMES COLLINS misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence of the scheme, the purposes of the scheme, and acts done in furtherance of the scheme.

24.     In or about March 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,

defendant herein, knowingly executed the scheme to defraud by submitting and causing to be submitted to Financial Institution 1 a monthly servicer report that contained false information about the status of loans in connection with the Warehouse Line for the month of February 2016;

In violation of Title 18, United States Code, Section 1344(2).

## COUNT TWO

The SPECIAL MAY 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1-23 of Count One are incorporated here.

2.     In or about May 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

### JAMES COLLINS,

defendant herein, knowingly executed the scheme to defraud by submitting and causing to be submitted to Financial Institution 1 a monthly servicer report that contained false information about the status of loans in connection with the Warehouse Line for the month of April 2016;

In violation of Title 18, United States Code, Section 1344(2).

## COUNT THREE

The SPECIAL MAY 2022 GRAND JURY further charges:

1. The allegations in paragraphs 1-23 of Count One are incorporated here.

2. In or about July 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,

defendant herein, knowingly executed the scheme to defraud by submitting and causing to be submitted to Financial Institution 1 a monthly servicer report that contained false information about the status of loans in connection with the Warehouse Line for the month of June 2016;

In violation of Title 18, United States Code, Section 1344(2).

## COUNT FOUR

The SPECIAL MAY 2022 GRAND JURY further charges:

1.    The allegations in paragraphs 1-23 of Count One are incorporated here.

2.    In or about September 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,

defendant herein, knowingly executed the scheme to defraud by submitting and causing to be submitted to Financial Institution 1 a monthly servicer report that contained false information about the status of loans in connection with the Warehouse Line for the month of August 2016;

In violation of Title 18, United States Code, Section 1344(2).

## COUNT FIVE

The SPECIAL MAY 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1-23 of Count One are incorporated here.

2.     In or about October 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

### JAMES COLLINS,

defendant herein, knowingly executed the scheme to defraud by submitting and causing to be submitted to Financial Institution 1 a monthly servicer report that contained false information about the status of loans in connection with the Warehouse Line for the month of September 2016;

In violation of Title 18, United States Code, Section 1344(2).

## COUNT SIX

The SPECIAL MAY 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1-23 of Count One are incorporated here.

2.     In or about January 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

### JAMES COLLINS,

defendant herein, knowingly executed the scheme to defraud by submitting and causing to be submitted to Financial Institution 1 a monthly servicer report that contained false information about the status of loans in connection with the Warehouse Line for the month of December 2016;

In violation of Title 18, United States Code, Section 1344(2).

## **COUNT SEVEN**

The SPECIAL MAY 2022 GRAND JURY further charges:

1.      The allegations in paragraphs 1-23 of Count One are incorporated here.

2.      In or about February 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,

defendant herein, knowingly executed the scheme to defraud by submitting and causing to be submitted to Financial Institution 1 a monthly servicer report that contained false information about the status of loans in connection with the Warehouse Line for the month of January 2017;

In violation of Title 18, United States Code, Section 1344(2).

19

## **COUNT EIGHT**

The SPECIAL MAY 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1-23 of Count One are incorporated here.

2.     In or about April 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

### JAMES COLLINS,

defendant herein, knowingly executed the scheme to defraud by submitting and causing to be submitted to Financial Institution 1 a monthly servicer report that contained false information about the status of loans in connection with the Warehouse Line for the month of March 2018;

In violation of Title 18, United States Code, Section 1344(2).

## COUNT NINE

The SPECIAL MAY 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1-23 of Count One are incorporated here.

2.     In or about May 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,

defendant herein, knowingly executed the scheme to defraud by submitting and causing to be submitted to Financial Institution 1 a monthly servicer report that contained false information about the status of loans in connection with the Warehouse Line for the month of April 2018;

In violation of Title 18, United States Code, Section 1344(2).

## COUNT TEN

The SPECIAL MAY 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1-23 of Count One are incorporated here.

2.     In or about June 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,

defendant herein, knowingly executed the scheme to defraud by submitting and causing to be submitted to Financial Institution 1 a monthly servicer report that contained false information about the status of loans in connection with the HATS Trust for the month of May 2017;

In violation of Title 18, United States Code, Section 1344(2).

## COUNT ELEVEN

The SPECIAL MAY 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1-23 of Count One are incorporated here.

2.     In or about July 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

### JAMES COLLINS,

defendant herein, knowingly executed the scheme to defraud by submitting and causing to be submitted to Financial Institution 1 a monthly servicer report that contained false information about the status of loans in connection with the HATS Trust for the month of June 2017;

In violation of Title 18, United States Code, Section 1344(2).

## COUNT TWELVE

The SPECIAL MAY 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1-23 of Count One are incorporated here.

2.     In or about August 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,

defendant herein, knowingly executed the scheme to defraud by submitting and causing to be submitted to Financial Institution 1 a monthly servicer report that contained false information about the status of loans in connection with the HATS Trust for the month of July 2017;

In violation of Title 18, United States Code, Section 1344(2).

24

## COUNT THIRTEEN

The SPECIAL MAY 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1-23 of Count One are incorporated here.

2.     In or about September 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

### JAMES COLLINS,

defendant herein, knowingly executed the scheme to defraud by submitting and causing to be submitted to Financial Institution 1 a monthly servicer report that contained false information about the status of loans in connection with the HATS Trust for the month of August 2017;

In violation of Title 18, United States Code, Section 1344(2).

## COUNT FOURTEEN

The SPECIAL MAY 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1-23 of Count One are incorporated here.

2.     In or about November 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

### JAMES COLLINS,

defendant herein, knowingly executed the scheme to defraud by submitting and causing to be submitted to Financial Institution 1 a monthly servicer report that contained false information about the status of loans in connection with the HATS Trust for the month of October 2017;

In violation of Title 18, United States Code, Section 1344(2).

26

## **COUNT FIFTEEN**

The SPECIAL MAY 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1-23 of Count One are incorporated here.

2.     In or about December 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

### JAMES COLLINS,

defendant herein, knowingly executed the scheme to defraud by submitting and causing to be submitted to Financial Institution 1 a monthly servicer report that contained false information about the status of loans in connection with the HATS Trust for the month of November 2017;

In violation of Title 18, United States Code, Section 1344(2).

27

## COUNT SIXTEEN

The SPECIAL MAY 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1 and 3-23 of Count One are incorporated here.

2.     Beginning no later than in or about December 2016, and continuing until no earlier than in or about May 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,

defendant herein, in the offer and sale of securities, directly and indirectly, by the use of means and instrumentalities of interstate commerce, namely the internet and wire transmissions, knowingly and willfully: (a) employed a device, scheme and artifice to defraud; (b) obtained money or property by means of untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any person, in connection with the offer and sale of bonds issued by the HATS Trust, as set forth more fully in paragraphs 3 through 23 of Count One;

In violation of Title 15, United States Code, Sections 77q(a) and 77x.

## COUNT SEVENTEEN

The SPECIAL MAY 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1 and 3-23 of Count One are incorporated here.

2.     Beginning no later than in or about December 2016, and continuing until no earlier than in or about May 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

### JAMES COLLINS,

defendant herein, directly and indirectly, by the use of means and instrumentalities of interstate commerce, namely the internet and wire transmissions, willfully used and employed, in connection with the purchase and sale of securities, a manipulative and deceptive device and contrivance, in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device, scheme and artifice to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any person, in connection with the purchases and sales of HATS Trust bonds, as set forth more fully in paragraphs 3 through 23 of Count One;

30

In violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

## FORFEITURE ALLEGATION

The SPECIAL MAY 2022 GRAND JURY further alleges:

1.     The allegations of Counts One through Seventeen are incorporated here for the purpose of alleging forfeiture to the United States pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(c).

2.     As a result of the violations as alleged in Counts One through Seventeen of the foregoing indictment,

### JAMES COLLINS,

defendant herein, shall forfeit to the United States any and all right, title, and interest he may have in any property, real and personal, which constitutes and is derived from proceeds traceable to the offenses charged in Counts One through Seventeen.

3.     The interests of defendant subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) as incorporated by Title 28, United States Code, Section 2461(c), include, but are not limited to a personal money judgment in the amount of approximately $54.5 million.

4.     If any of the forfeitable property described above, as a result of any act or omission by defendant:

(a)     Cannot be located upon the exercise of due diligence;

(b)    Has been transferred or sold to, or deposited with, a third party;

(c)    Has been placed beyond the jurisdiction of the court;

(d)    Has been substantially diminished in value; or

(e)    Has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c);

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

A TRUE BILL:

_____

FOREPERSON

_____

Signed by Jason Yonan on behalf of the
UNITED STATES ATTORNEY

34